IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

| | |
|---|---|
| Ima Emming,<br><br>    Plaintiff,<br><br>vs.<br><br>Michael J. Astrue,<br>Commissioner of Social Security,<br><br>    Defendant. | Civil Action No. 8:09-2027-RMG-BHH<br><br>**REPORT AND RECOMMENDATION<br>OF MAGISTRATE JUDGE** |

This case is before the Court for a report and recommendation pursuant to Local Rule 73.02(B)(2)(a), D.S.C., concerning the disposition of Social Security cases in this District, and Title 28, United States Code, Section 636(b)(1)(B).[1]

The plaintiff, Ima Emming, brought this action pursuant to Section 205(g) of the Social Security Act, as amended, (42 U.S.C. Section 405(g)), to obtain judicial review of a final decision of the Commissioner of Social Security Administration regarding her claim for disability insurance benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act.

## RELEVANT FACTS AND ADMINISTRATIVE PROCEEDINGS

The plaintiff was 35 years old on the alleged onset date. (R. at 93.) She alleges she became disabled on July 31, 2004, due to depression, anxiety, migraine headaches and stomach (female) problems. (R. at 93, 119.) She has an eighth grade education and attended some special education classes in school (R. at 24, 124-25, 224, 293) and has past relevant work as a babysitter, cashier and dispatcher (R. at 26-27, 31-32, 120-132).

The plaintiff protectively filed applications for DIB and SSI on December 31, 2005 (R. at 93-104.) Her applications were denied in initial and reconsidered determinations. (R. at 53-69.) After a *de novo* hearing (R. at 19-52), an Administrative Law Judge (ALJ) denied

---

[1] A report and recommendation is being filed in this case, in which one or both parties declined to consent to disposition by the magistrate judge.

plaintiff's claim on December 12, 2008 (R. at 10-18). As the Appeals Council denied the plaintiff's request for review (R. at 1-3), the ALJ's decision became the Commissioner's final decision for purposes of judicial review.

In making his determination that the plaintiff is not entitled to benefits, the Commissioner has adopted the following findings of the administrative law judge:

> (1) The claimant met the insured status requirements of the Social Security Act through December 31, 2006.
>
> (2) The claimant has not engaged in substantial gainful activity since July 31, 2004, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).
>
> (3) The claimant has the following severe impairments: depression, anxiety, migraine headaches (20 CFR 404.1521 *et. seq.*, and 416.921, *et seq.*).
>
> (4) The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1525, 404.1526, 416.925 and 416.926).
>
> (5) After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except that the claimant is limited to simple routine tasks, short simple instructions, limited public contact including co-works [sic] and supervisors, limited exposure to bright lights and nosie, and is unable to perform work at production rate or pace.
>
> (6) The claimant is capable of performing past relevant work as a dispatcher/receptionist and babysitter. This work does not require the performance of work-related activities precluded by claimant's residual functional capacity (20 CFR 404.1565 and 416.965).
>
> (7) The claimant has not been under a disability, as defined in the Social Security Act, from July 31, 2004, through the date of this decision (20 CFR. 404.1520(g) and 416/920(g)).

2

## **APPLICABLE LAW**

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a "disability." 42 U.S.C. §423(a). "Disability" is defined in 42 U.S.C. §423(d)(1)(A) as:

> the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for at least 12 consecutive months.

42 U.S.C. §423(d)(1)(A).

To facilitate a uniform and efficient processing of disability claims, the Act has by regulation reduced the statutory definition of "disability" to a series of five sequential questions. An examiner must consider whether the claimant (1) is engaged in substantial gainful activity, (2) has a severe impairment, (3) has an impairment which equals an illness contained in the Social Security Administration's Official Listings of Impairments found at 20 C.F.R. Part 4, Subpart P, App. 1, (4) has an impairment which prevents past relevant work, and (5) has an impairment which prevents him from doing substantial gainful employment. *See* 20 C.F.R. §404.1520. If an individual is found not disabled at any step, further inquiry is unnecessary. *See Hall v. Harris*, 658 F.2d 260, 264 (4th Cir. 1981).

A plaintiff is not disabled within the meaning of the Act if he can return to past relevant work as it is customarily performed in the economy or as the claimant actually performed the work. Social Security Ruling ("SSR") 82–62. The plaintiff bears the burden of establishing his inability to work within the meaning of the Act. 42 U.S.C. §423(d)(5). He must make a prima facie showing of disability by showing he is unable to return to his past relevant work. *Grant v. Schweiker*, 699 F.2d 189, 191 (4th Cir. 1983).

Once an individual has established an inability to return to his past relevant work, the burden is on the Commissioner to come forward with evidence that the plaintiff can perform

3

alternative work and that such work exists in the regional economy. The Commissioner may carry the burden of demonstrating the existence of jobs available in the national economy which the plaintiff can perform despite the existence of impairments which prevent the return to past relevant work by obtaining testimony from a vocational expert. *Id.*

The scope of judicial review by the federal courts in disability cases is narrowly tailored to determine whether the findings of the Commissioner are supported by substantial evidence and whether the correct law was applied. *Richardson v. Perales*, 402 U.S. 389 (1971); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Consequently, the Act precludes a *de novo* review of the evidence and requires the court to uphold the Commissioner's decision as long as it is supported by substantial evidence. *See Pyles v. Bowen*, 849 F.2d 846, 848 (4th Cir. 1988) (citing *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986)). The phrase "supported by substantial evidence" is defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."

*Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir.1966). Thus, it is the duty of this court to give careful scrutiny to the whole record to assure that there is a sound foundation for the Commissioner's findings, and that her conclusion is rational. *Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). If there is substantial evidence to support the decision of the Commissioner, that decision must be affirmed. *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

## **DISCUSSION**

The plaintiff contends that the ALJ erred in failing to find her disabled. Specifically, the plaintiff alleges that the ALJ erred in (1) failing to find that her mental impairments

4

satisfied the criteria of Listing 12.05; and (2) finding that she can perform work as a child monitor and dispatcher/receptionist. The Court will consider each objection in turn.

**I.    LISTING 12.05**

The plaintiff principally contends that the ALJ failed to recognize that medical evidence established the presence of a disabling mental impairment listed in section 12.05 of Appendix 1 to 20 C.F.R. § 404, Subpart P. More specifically, the plaintiff complains that the ALJ did not even consider application of the Listing. The Court would agree that the oversight justifies remand.

>Section or Listing 12.05 states in relevant part:
>
>>12.05 Mental Retardation and Autism: Mental retardation refers to a significantly subaverage general intellectual functioning with deficits in adaptive behavior initially manifested during the developmental period (before age 22) . . . The required level of severity for this disorder is met when the requirements in A, B, C, *or* D are satisfied.
>>
>>. . .
>>
>>B.  A valid verbal, performance, or full scale IQ of 59 or less;
>>
>>C. A valid verbal, performance, or full scale I.Q. of 60 to 69 inclusive and a physical or other mental impairment imposing additional and significant work-related limitations of function;
>>
>>. . .

20 C.F.R. pt. 404, Subpart P, App. 1, § 12.05. Under Section 12.05(**B**), therefore, if the plaintiff demonstrates an IQ score of less than 60 she is automatically considered disabled. In contrast, there are two requirements under Section 12.05(**C**), which is at issue here. *See Boatwright v. Secretary, Dept. of Health and Human Services*, 1989 WL 79720, at *2 (4th Cir. July 12, 1989). First, a claimant's I.Q. score must come within the listed range of 60 to 69 inclusive, and second, she must be able to demonstrate an additional significant limitation. *See id.* at *2. If both requirements are met, then the plaintiff is considered disabled and entitled to benefits. *See id. at *3;* 20 C.F.R. § 416.920(d) ("If you have an impairment(s) which meets the duration requirement and is listed in appendix 1 or is equal

5

to a listed impairment(s), we will find you disabled without considering your age, education, and work experience.").

The defendant argues that the plaintiff also must satisfy the diagnostic description in the introductory paragraph of Listing 12.05 in addition to one of the four sets of criteria, defined in subsections A, B, C, or D. The plaintiff agrees. As quoted above, Listing 12.05's introductory paragraph states mental retardation "refers to a significantly subaverage general intellectual functioning with deficits in adaptive behavior . . . ." 20 C.F.R. pt. 404, Subpart P, App. 1, § 12.05. The prevailing view among the circuit courts of appeal appears to unequivocally confirm the defendant's position. A recent and thorough discussion by the Fifth Circuit, which included a survey of relevant decisions, concluded that a claimant must, in fact, establish both the diagnostic portion of the introductory paragraph in addition to one of the severity indicators, delineated in subsections A - D. *See Randall v. Astrue*, 570 F.3d 651, 657-59 (5th Cir. June 8, 2009). The Fourth Circuit has apparently not directly considered it. As it has in the past, the Court, without compelling alternative guidance from the Fourth Circuit, would defer to the essentially uniform judgment of other circuits and the agreement of the parties, in this case.

The salient problem here, however, is that the ALJ makes no mention or analysis of Listing 12.05 whatsoever. At Step Three, the ALJ considered the plaintiff's impairments in light of the expressly identified Listings 12.04 (depression) and 12.06 (anxiety) but made no mention of Listing 12.05 anywhere in the decision. The defendant does not dispute that Listing 12.05 was not considered.

Other courts have concluded that where the evidence in the administrative record "clearly generates an issue as to a particular listing," *Venters v. Astrue*, 2010 WL 481246, at *3 n.2 (D. Md. February 04, 2010), or "'fairly raises the question' of equivalence" to a Listing, an ALJ's failure to properly "identify the LOI [Listing of Impairment]," justifies remand, *Lilly v. Barnhart*, 2004 WL 875545, at *4 (E.D. Pa. March 22, 2004) (quoting Maniaci v. Apfel, 27 F.Supp.2d 554, 557 (E.D.Pa.1998)); *see also* SSR 96-6p, "Medical

6

Equivalence." Here, the defendant concedes that operative scores, below 70, are present. (Def. Brief at 9.) The plaintiff exhibited a verbal IQ of 69, a performance 73, and full scale score of 68. (R. 295). There is no insinuation in the record that these scores are anything but valid. Dr. Donald Salmon, an examining physician, diagnosed the plaintiff with extremely low intellectual functioning (R. at 296.)

To the Court, the presence of such uncontested scores necessarily implicates and "fairly raises the question of" Listing 12.05's applicability. The above scores are indisputedbly within the Listing's range and it cannot be said that it is so obvious that the plaintiff did not satisfy the other requirements of 12.05 that no comment of the ALJ was even necessary to disregard it. In fact, quite to the contrary, the plaintiff has offered various reasons why she does satisfy the remainder of the Listing. The defendant does not stridently disagree. In fact, the defendant concedes both the presence of actionable scores and evidence of "an additional impairment imposing significant work-related limitations of functioning," namely her depression and anxiety. (Def. Brief at 9.)

As to deficits in adaptive behavior initially manifested during the developmental period, however, the defendant rejects that the plaintiff has met her burden to show the requirement can be satisfied. The plaintiff, however, testified that she can only read a little bit, having been in special education classes until eighth grade. (R. at 24.) Psychological testing confirms that she only reads at the second grade level (R. at 296.) There is evidence that even in special education classes, the plaintiff was failing. (R. at 25.) A claimant need not specifically show an actual IQ score of 70 or below during the developmental period. *See Branham v. Heckler*, 775 F.2d 1271, 1274 (4th Cir. 1985) (assuming, without evidence of a change in intellectual functioning, that the IQ was unchanged since the developmental period). The defendant rejoins with evidence that none of her physicians viewed the plaintiff as having mental retardation and other evidence that her impairment did not meet listing-level severity. (See R. at 120-26, 131, 227-42, 259-76.)

The Court court will not stand in the place of the administrative process and resolve the competing evidence, however. Here, "[t]he ALJ should have identified the relevant listed impairments. He should then have compared each of the listed criteria to the evidence of [the claimant's] symptoms." *Cook v. Heckler*, 783 F.2d 1168 (4th Cir.1986). "Without such an explanation, it is simply impossible to tell whether there was substantial evidence to support the determination." *Id.* at 1173. The evidence is not so devoid of effective evidence in the plaintiff's favor such that the undersigned may simply characterize the ALJ's failure to analyze Listing 12.05 as merely a harmless error or oversight. *See Mickles v. Shalala*, 29 F.3d 918, 921 (4th Cir. 1994) (affirming denial of benefits where the ALJ erred in evaluating claimant's pain because "he would have reached the same conclusion notwithstanding his initial error"). There is a real conflict of record to be considered and the Court should defer to the ALJ.

Upon remand, the ALJ should expressly consider the evidence in light of the demands of Listing 12.05 and, if necessary, reopen the record to inquire further regarding the plaintiff's ability to function.

## II.     Past Relevant Work

Between steps three and four of the sequential evaluation, the ALJ determined that the plaintiff had the residual functional capacity for light work with "simple routine tasks, short simple instructions, limited public contact including cowork[ers] and . . . no work at production rate or pace." (R. at 15). The plaintiff does not dispute the residual functional capacity restrictions. (Pl. Br. at 12.) Next, at step four, the ALJ considered whether the plaintiff's limitations were consistent with the demands of any of her past relevant work. (R. at 17-18.)

One of the plaintiff's past jobs consisted of babysitting three children, and another consisted of answering the telephone at a trucking business. (R. at 26-27, 30-32, 120-26, 131.) The plaintiff contends that her residual functional capacity restriction to "simple routine work" with "short simple instructions" would preclude these jobs because both jobs

8

are generally semi-skilled (SVP 3) according to the Dictionary of Occupational Titles (DOT) and vocational expert's testimony, rather than unskilled. (Pl. Br. at 10; see R. 47-48.)

As the defendant, emphasizes, however, the ALJ found that the plaintiff could perform these jobs "as she actually performed [them]," as opposed to how they are generally performed in the national economy. (R. at 17-18.) "The [residual functional capacity] to meet the physical and mental demands of jobs a claimant has performed in the past (***either the specific job a claimant performed*** or the same kind of work as it is customarily performed throughout the economy) is generally a sufficient basis for a finding of 'not disabled.'" SSR 82-62, 1982 WL 31386, at *3 (emphasis added). Accordingly, the plaintiff's RFC was consistent with the manner in which she performed her past relevant work regardless of the way in which such jobs are described in the DOT. The plaintiff has made no response to this point in her Reply Brief.

The Court would not recommend remand for any error in assessing the demands of the plaintiff's past relevant work.

## **CONCLUSION AND RECOMMENDATION**

Based upon the foregoing, the Court cannot conclude that the ALJ's decision to deny benefits was supported by substantial evidence. It is, therefore, RECOMMENDED, for the foregoing reasons, that the Commissioner's decision should be reversed and remanded under sentence four of 42 U.S.C. § 405(g) to the Commissioner for further proceedings as set forth above. *See Melkonyan v. Sullivan*, 501 U.S. 89 (1991).

IT IS SO RECOMMENDED.

                                                  s/Bruce H. Hendricks
                                                  BRUCE H. HENDRICKS
                                                  UNITED STATES MAGISTRATE JUDGE

September 8, 2010
Greenville, South Carolina